```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

Robin Hendrix,                )
                              )
            Plaintiff,         ) Case No. 1:04-CV-757
                              )
     vs.                      )
                              )
City of Cincinnati,           )
et al.,                       )
                              )
            Defendants.        )

O R D E R

This matter is before the Court on Defendants' motion for judgment as a matter of law or in the alternative for a new trial (Doc. No. 83) and Plaintiff's motion for sur-reply memorandum (Doc. No. 88).  For the reasons that follow, Defendants' motion for judgment as a matter of law or for a new trial is not well-taken and is **DENIED**; Plaintiff's motion to file a sur-reply brief is **MOOT**.

Plaintiff Robin Hendrix has been employed the City of Cincinnati Water Works Department since 1988.  In November 2002, Plaintiff received a probationary promotion to the position of field supervisor in the Water Works maintenance department.  Plaintiff was officially promoted to field supervisor in March 2003, but a one year probationary period accompanied this promotion.  At the conclusion of this probationary period, Plaintiff's promotion would have become permanent and her job would have been protected by civil service regulations.  However,

on February 27, 2004, approximately two weeks before her probationary period was concluded, Plaintiff's supervisors failed her probation because of a written reprimand she received for her alleged failure to make timely reports of sexual harassment.

Plaintiff filed a complaint asserting claims for gender discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Ohio Civil Rights, Ohio Rev. Code Chapter 4112, against the City of Cincinnati and individual Defendants Frederick Merz and Darryl Gundrum.  Another individual Defendant, Frank Rotte, was dismissed from the case at the summary judgment stage.  The case proceeded to a jury trial on Plaintiff's claims from September 4, 2007 through September 19, 2007.

The jury returned special verdicts finding in favor of Plaintiff on her claims of gender discrimination and retaliation against each of the Defendants.  See Doc. No. 78.  The jury found in favor of each of the Defendants on Plaintiff's hostile work environment claims.  The jury awarded Plaintiff $8,400 in back pay, $66,500 in front pay, and $125,100 in compensatory damages against the City of Cincinnati.  The jury awarded compensatory damages to Plaintiff of $5,000 each against Merz and Gundrum. With regard to punitive damages against the individual

Defendants, the jury found that Merz and Gundrum acted with malice, but did not award Plaintiff monetary damages.

On October 4, 2007, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendants filed a timely renewed motion for judgment as a matter of law on Plaintiff's gender discrimination and retaliation claims.  Alternatively, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, Defendants move for a new trial on Plaintiff's claims.  In their motion, Defendants raise four grounds for judgment as a matter of law and/or for a new trial: 1) Plaintiff failed to present sufficient evidence that Defendants' reason for demoting her was pretextual; 2) the jury's verdict on the discrimination and retaliation claims was against the weight of the evidence; 3) the jury failed to reduce the front pay award to present value; and 4) the evidence was insufficient to support a finding of punitive damages.

The inquiry for resolving a motion for judgment as a matter of law pursuant to Rule 50 is the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The trial court reviews all of the evidence in the record in the light most favorable to the nonmoving party and determines whether there was a genuine issue of material fact for the jury.  Gray v. Toshiba Am. Consumer Prods., Inc., 263 F.3d

595, 598 (6th Cir. 2001). The trial court must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." White v. Burlington Northern & Santa Fe R. Co., 364 F.3d 789, 794 (6th Cir. 2004)(quoting Fed. R. Civ. P. 50(a)). The court must draw all reasonable inferences in favor of the prevailing party, and cannot make any credibility determinations or weigh the evidence. Reeves, 530 U.S. at 150. Therefore, the trial court "must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

Pursuant to Federal Rule of Civil Procedure 59(a) a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being

4

unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias. Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

In this case, Defendants argue in part that the jury's verdicts on Plaintiff's gender discrimination and retaliation claims were against the weight of the evidence. A court may set aside a verdict and grant a new trial when it "is of the opinion that the verdict is against the clear weight of the evidence." Duncan v. Duncan, 377 F.2d 49, 52 (6th Cir. 1967) (citation omitted). However, new trials are not to be granted on the grounds that the verdict was against the weight of the evidence "unless that verdict was unreasonable." Holmes, 78 F.3d at 1047. Thus, if a reasonable juror could reach the challenged verdict, a new trial is improper. See id. at 1048. "[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Duncan, 377 F.2d at 52 (citation omitted).

The Court takes up Defendants' arguments seriatim.

In this case, Defendants' first two grounds for judgment as a matter of law and/or for a new trial are related. Defendants argue that Plaintiff failed to produce sufficient evidence of pretext and that the jury's verdicts on her

5

discrimination and retaliation claims were against the weight of the evidence.

Defendants' contention that Plaintiff failed to introduce sufficient evidence of pretext somewhat misses the mark. Plaintiff had no direct evidence of discrimination or retaliation and so the case was presented to the jury under the familiar McDonnell Douglas burden-shifting mode of proof. Once the plaintiff establishes a prima facie case of discrimination, and the defendant meets its burden of providing a legitimate non-discriminatory reason for its employment decision, as was the case here, the factfinder is then in position to decide the ultimate issue in the case, i.e., whether the employer intentionally discriminated against the plaintiff. United States Postal Serv. v. Aikens, 460 U.S. 711, 714-16 (1983). In other words, when reviewing the evidence after the jury's verdict, the court is not concerned with the McDonnell Douglas burden-shifting analysis, but rather proceeds to the ultimate question of whether the plaintiff proved discrimination by a preponderance of the evidence. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 727 (6th Cir. 2004). Nevertheless, as the Noble Court realized, the task of assessing the sufficiency of the evidence is similar to determining whether the plaintiff has established a prima facie case of discrimination and carried her burden of proving that the employer's reasons were pretext. Id. at 727-28. In the end, in

response to Defendants' motion, this Court's task is to determine whether there was sufficient evidence for the jury to conclude both that Defendants' reason for demoting Plaintiff was pretextual <u>and</u> that the real reason was intentional discrimination.  <u>Id.</u> at 728; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 508 (1993).  The Court finds that Plaintiff adduced sufficient evidence to carry her burden of proof on her gender discrimination claim.

      Plaintiff presented evidence from which the jury could reasonably have concluded that Defendants treated a similarly-situated male probationary field supervisor better than the Plaintiff.  In order to be similarly-situated, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment; rather, the plaintiff must show that all relevant aspects of her employment situation are nearly identical to the other employee's situation.  <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998). To make a comparison of a discrimination plaintiff's treatment to that of non-protected employees, the plaintiff must show that the "comparables" are similarly-situated in all respects.  <u>Stotts v. Memphis Fire Dep't</u>, 858 F.2d 289 (6th Cir. 1988).  To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged

in the same conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff was demoted for failing to promptly report incidents of sexual harassment. Plaintiff, however, also presented evidence from which the jury could have found that David Washington failed to promptly report incidents of use of racial slurs, but nonetheless passed his probationary period. The main difference between Plaintiff's conduct and Washington's conduct is that Plaintiff was subjected to an incident of sexual harassment in August 2003 which came to light during the investigation of her February 2004 complaint of harassment.[1] The August 2003 incident is thus perhaps more remote than the racial comments that Washington failed to report for a time. Plaintiff, however, testified that she did make a timely report of the August 2003 incident to Defendant Merz and that he failed to take

---

[1] Defendants argue that Washington and Plaintiff are different because Washington's report concerned comments he heard before he became a field supervisor. This is incorrect. Joint Exhibit I reflects that although the racial comments had petered out for a time, Washington reported to Patty Burke that "just recently [March 2004] it started up again." Thus, based on Joint Exhibit I, the jury could have concluded that Washington also delayed reporting harassing comments he heard as a field supervisor. Given that Plaintiff and Washington both delayed filing reports of harassment for some period, the degree to which their conduct should be differentiated was for the jury to decide.

any corrective action on her complaint.  Therefore, Plaintiff testified that she tried to handle the December 2003 incident on her own.  The jury could have reasonably concluded that Merz's failure to take action on Plaintiff's August 2003 complaint was a circumstance that mitigated any differences between her conduct and Washington's conduct.[2]

Defendants treated Washington better than Plaintiff in another way too.  For reasons that were never satisfactorily explained by the defense, although Plaintiff and Washington lodged their harassment complaints at the same time, at the beginning of February 2004, the investigation into Washington's complaint did not begin until March 18, 2004, after Washington's probationary period had concluded.  See Joint Ex. I.  At that point, the record demonstrated, it would not have been possible to demote Washington based only a written reprimand.  Had the investigation into Plaintiff's complaint been similarly delayed, Defendants would not have been able to demote Plaintiff from her field supervisor position because of a written complaint.  In

---

[2] Defendants note that Plaintiff failed to inform Patty Burke during Burke's investigation of Plaintiff's complaint that she had reported the August 2003 incident to Defendant Merz. Defendants thus apparently suggest that this omission shows that Plaintiff did not report the August 2003 incident to Merz. Plaintiff testified, however, that she failed to tell Burke about her earlier complaint to Merz because she feared retaliation.  In any event, Plaintiff's omission only left a credibility determination which the jury apparently resolved in Plaintiff's favor.

fact, however, Defendants completed the investigation into Plaintiff's complaint and demoted her before the investigation into Washington's complaint even began. Thus, Defendants treated Washington better than Plaintiff in the manner in which it conducted the investigations into their complaints.

There was other evidence from which the jury could have reasonably concluded that Defendants discriminated against Plaintiff.

Neither the City of Cincinnati nor the Water Works Department had a written policy that receipt of a single written reprimand is sufficient grounds for a field supervisor to fail his or her probationary period. This was a policy that Defendant Merz allegedly adopted. In other words, the requirement that a probationary field supervisor could not pass with a written reprimand was essentially a subjective job criteria that Merz employed. Moreover, insofar as this record reflects, there was no written policy that a supervisor's failure to timely report an incident of workplace harassment was grounds to receive a written reprimand. This also seems to be a subjective performance criteria. As the Sixth Circuit has stated, "subjective reasons provide ready mechanisms for discrimination." Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 461 (6th Cir. 2004); see also Bruhwiler v. University of Tenn., 859 F.2d 419, 421 (6th Cir. 1988)(employment decision is subject to "particularly close

10

scrutiny" when it was subjective and decision makers were not members of minority group).

The only other male probationary field supervisor demoted under this policy that Defendants identify is Tony Tolbert and he was demoted for harassing Plaintiff. Undoubtedly, however, the jury could have concluded that Tolbert and Plaintiff were not comparable because Tolbert's conduct in committing sexual harassment was worse than Plaintiff's conduct in allegedly failing to report sexual harassment. Moreover, Defendants likely had little choice but to demote Tolbert after substantiating that he was guilty of perpetrating sexual harassment. In Plaintiff's case, however, given that there was no formal policy requiring that Plaintiff receive a written reprimand for the way she handled the sexual harassment directed toward her, the jury reasonably could have concluded that the punishment did not fit the crime and that, therefore, the reasons for demoting her were pretextual.[3] In fact, even though Plaintiff was a supervisor and probably should have handled the harassment she was subjected to more appropriately, the jury might have concluded that demoting a

---

[3] Defendants continue to insist, as they did throughout the trial, that Plaintiff failed to prove pretext because she admitted that a written reprimand was a sufficient basis to fail her probation. Defendants, however, overemphasize the significance of this admission. Admitting that a written reprimand is a sufficient ground for failing probation is not the same as admitting that one deserves to receive a written reprimand. Plaintiff has consistently argued that she did nothing to deserve a written reprimand.

11

victim of sexual harassment was so unfair that discrimination was the real reason for her demotion.  At a minimum, the jury might reasonably have concluded that Defendants' decision to demote an acknowledged victim of sexual harassment was so idiosyncratic as to be unworthy of credence.  See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003).

Plaintiff also presented evidence of pretext in the form of her final performance review as a probationary field supervisor, which was completed by Defendant Gundrum on March 16, 2004.  Joint Ex. VII.  In this document, Gundrum rated Plaintiff as "Does Not Meet Expectations" in her overall performance.  Although Defendants discount the significance of this document because the written reprimand would have been sufficient to demote Plaintiff, if nothing else this performance review sheds light on Defendants' overall attitude toward Plaintiff.  Despite rating Plaintiff satisfactory in every performance category just six months earlier, see Joint Ex. VI, by March 2004 Gundrum concluded that Plaintiff was deficient in five out of seven categories.  Plaintiff, however, adduced evidence that the deficiencies cited by Gundrum had no basis in fact.

For instance, Gundrum found that the quality of Plaintiff's work did not meet expectations based on a single incident in which she allegedly did not properly handle an investigation concerning a vehicle accident that occurred in

victim of sexual harassment was so unfair that discrimination was the real reason for her demotion.  At a minimum, the jury might reasonably have concluded that Defendants' decision to demote an acknowledged victim of sexual harassment was so idiosyncratic as to be unworthy of credence.  See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003).

Plaintiff also presented evidence of pretext in the form of her final performance review as a probationary field supervisor, which was completed by Defendant Gundrum on March 16, 2004.  Joint Ex. VII.  In this document, Gundrum rated Plaintiff as "Does Not Meet Expectations" in her overall performance.  Although Defendants discount the significance of this document because the written reprimand would have been sufficient to demote Plaintiff, if nothing else this performance review sheds light on Defendants' overall attitude toward Plaintiff.  Despite rating Plaintiff satisfactory in every performance category just six months earlier, see Joint Ex. VI, by March 2004 Gundrum concluded that Plaintiff was deficient in five out of seven categories.  Plaintiff, however, adduced evidence that the deficiencies cited by Gundrum had no basis in fact.

For instance, Gundrum found that the quality of Plaintiff's work did not meet expectations based on a single incident in which she allegedly did not properly handle an investigation concerning a vehicle accident that occurred in

Kentucky.  Plaintiff, however, presented evidence that she did everything she was supposed to do concerning filing the proper paperwork.  Additionally, Gundrum found that Plaintiff did not meet expectations concerning her attendance, citing five occasions with eleven days of sick pay.  However, Plaintiff presented evidence that some of her absences were FMLA-approved absences which witnesses agreed should not have been counted as occurrences.  Plaintiff also presented evidence that at least one of her absences was due to a work-related injury, which also should not have counted as an occurrence.  Gundrum also found that Plaintiff did not meet expectations in supervisory skill, also based on one incident in which she allegedly left two employees idling in the pipe yard.  However, Plaintiff presented evidence that she told them to get back to work but then checked and verified their explanation that another supervisor, Jay Wingard, told them to remain in the pipe yard.  Thus, Plaintiff demonstrated that she was not responsible for allowing these workers to remain inactive.  Based on the evidence presented by Plaintiff, a reasonable juror could have concluded that Gundrum was papering her file with performance deficiencies in order to provide further justification for demoting her.

Plaintiff presented more picayune evidence of disparate treatment, such as being required to complete performance reviews of employees, who were not her direct reports, for other male

13

field supervisors, but she clearly established a submissible case of discrimination based on the theory that Defendants treated David Washington more favorably than her.  Moreover, there was sufficient evidence for the jury to conclude that Defendants discriminated against Plaintiff on the basis of gender.

Whether there was sufficient evidence to conclude that Defendants retaliated against Plaintiff is a moot question because both the discrimination claim and the retaliation claim were based on the same adverse employment action - the decision to demote Plaintiff from her probationary field supervisor position.  Plaintiff's damages were the same under either theory of recovery.  Thus, Defendants were not prejudiced by the jury's verdict on Plaintiff's retaliation claim.

Defendants argue that a new trial is warranted because the jury failed to reduce Plaintiff's front pay award to present value.  As noted, the jury awarded Plaintiff $66,500 in front pay.  Defendants argue that based on Plaintiff's testimony that the demotion cost her $7,000 per year, and the fact that she testified that she intends to work ten more years, her potential lost pay is $70,000.  Defendants then note that using a conservative return of 5% per year, an award of less than $50,000 in front pay would have made Plaintiff whole.  Plaintiff, however, argues that the evidence showed that she intends to work ten more years <u>from the date of trial</u>.  Plaintiff further argues

that applying a 5% discount rate over a thirteen year period (starting from the date of her demotion) period supports the jury's award of front pay.

The jury's award of damages should not be reduced unless it clearly exceeds the maximum which, under the evidence, the jury could reasonably find to be compensatory for the plaintiff's loss. Jackson v. City of Cookeville, 31 F.3d 1354, 1359 (6th Cir. 1994). The jury's award of damages may be supported under any reasonable interpretation of the evidence. Id. at 1361. The Court's trial notes support Plaintiff's contention concerning her estimated retirement date. A thirteen year loss period makes Plaintiff's gross front pay about $91,000. It appears, however, that the jury decided to use a more conservative discount rate than 5%. A discount rate of 2.5% based on a gross front pay award of $91,000 over a thirteen year period results in a present value of a little over $66,000. Alternatively, the jury may have selected a different discount rate, but determined that Plaintiff's yearly lost wages would have increased due to lost pay raises. See id. In any event, the jury's award of $66,500 in front pay was clearly within the realm of reasonable outcomes.

Finally, Defendants argue that the evidence was insufficient to support a finding of malice. Even if this contention is correct, the jury did not award Plaintiff any

15

punitive damages. Perhaps the jury concluded that the finding of malice itself was sufficient to punish Defendants and to deter them from engaging in similar conduct in the future. In any event, the finding itself is non-prejudicial since it did not result in an award of damages.

## Conclusion

For the reasons stated, Plaintiff presented sufficient evidence to submit her gender discrimination claim to the jury. Moreover, there was sufficient evidence for the jury to conclude that Defendants discriminated against Plaintiff on the basis of gender. Defendants' challenge to the sufficiency of the evidence on Plaintiff's retaliation claim and her claim for punitive damages is moot. The evidence supported the jury's award of front pay. Accordingly, Defendants' renewed motion for judgment as a matter of law, or for a new trial, is not well-taken and is **DENIED.** As a result of this conclusion, Plaintiff's motion to file a sur-reply brief is **MOOT.**

**IT IS SO ORDERED**

Date November 14, 2007              s/Sandra S. Beckwith
                                    Sandra S. Beckwith, Chief Judge
                                      United States District Court